UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                          Case No. 23-10114-LMI

REMER & GEORGES-PIERRE PLLC,                    Chapter 11

　　　Debtor.
_____/


## PLAN OF REORGANIZATION OF REMER & GEORGES-PIERRE PLLC


**Submitted on April 6, 2023 by:**

ZACH B. SHELOMITH, ESQ.
zbs@lss.law
Florida Bar No. 0122548
LSS LAW
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355

and

TIMOTHY S. KINGCADE, ESQ.
scanner@miamibankruptcy.com
Florida Bar No. 082309
KINGCADE, GARCIA & MCMAKEN, P.A.
Attorneys for the Debtor
1370 Coral Way
Miami, Florida 33145
Telephone: (305) 285-9100

## TABLE OF CONTENTS

**Article I – Summary and Background**………………………………..…………………………3

**Article II – Definitions**………………………………………………………..……………..5

**Article III - Treatment of Administrative Expense Claims and Priority Tax Claims**……….8

**Article IV - Classification and Treatment of Claims and Interests Under the Plan**………..…8

**Article V – Allowance and Disallowance of Claims**……………………………………....10

**Article VI – Provisions for Executory Contracts and Unexpired Leases**……………………10

**Article VII – Means for Implementation of the Plan**……………………………………11

**Article VIII – Discharge and Effect of Confirmation**……………………………...………12

**Article IX – Other Provisions**………………………………………………………..12

## EXHIBITS

**Exhibit "A" – Liquidation Analysis**

**Exhibit "B" – Projected Financial Information**

**Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan**

# ARTICLE I
## SUMMARY AND BACKGROUND

1.01    Introduction.  This is the Plan of Reorganization (the "Plan") under Subchapter V of Chapter 11 of the Bankruptcy Code of Remer & Georges-Pierre PLLC (the "Debtor").  Creditors will receive payments, from the sources described below, for a period of 5 years, with a discounted amount due if such payment(s) are made within a period of 3 years.

This Plan provides for 1 class of priority claims, 1 class of general unsecured claims and 1 class of equity security holders.  General unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 75.2167 cents on the dollar.  This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article IV of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

1.02    Description and History of the Debtor's Business.  The Debtor is a law firm that was incorporated in 2007.  The Debtor's members are Jason S. Remer ("Remer") and Anthony M. Georges-Pierre ("Georges-Pierre").  The Debtor handled legal matters relating to employment discrimination, personal injury, workers' compensation and wrongful death.  The Debtor handled matters solely on a contingency fee basis, such that the Debtor did not earn any income unless such matters resulted in a successful award at trial and subsequent payment(s), or a settlement and subsequent payment(s).

The Debtor's law practice was negatively affected by the COVID-19 pandemic, such that employment law matters substantially declined, and such matters constituted the majority of the Debtor's law practice.  Other legal matters also declined.  The inability to schedule trials impacted the Debtor's cash flow, because without successful trials and subsequent payments, the Debtor did not receive any income.  As a result of this decline in business, the Debtor became delinquent in a number of its obligations, including to its prior landlord, court reporter, accountant and process server, as reflected in the Debtor's Schedules [ECF No. 1].  As a result of the Debtor's default in payment(s) to its former landlord, its former landlord commenced a lawsuit against the Debtor, for monetary damages, which remained pending on the Petition Date.

On or around August 30, 2022, Georges-Pierre and Remer took on a law partner.  They accomplished this by opening a new law firm entity named Remer, Georges-Pierre & Hoogerwoerd, PLLC ("RG-P&H").  They funded RG-P&H through a capital contribution paid by the Debtor on August 30, 2022 in the amount of $5,000.00 (see Statement of Financial Affairs Item # 13.2; ECF No. 1).  They also transferred miscellaneous items of business equipment and office furniture, having a value of approximately $6,080.00 (see Statement of Financial Affairs Item # 13.1; ECF No. 1).  This personal property is also accounted for in the Debtor's Schedules (Schedule "B" Item # 41; ECF No. 1).

Clients of the Debtor with pending legal matters as of August 30, 2022 became clients of RG-P&H, in accordance with all Florida Bar rules and regulations.  RG-P&H continued to work on those legal matters under the same terms of representation, such that these matters were handled on a contingency fee basis.  As such, for many legal matters, RG-P&H performed work, expended resources, and did not receive any payment for same.  For other legal matters, RG-P&H performed

work, expended resources, and was paid legal fees (and will continue to do so). Prior to August 30, 2022, the Debtor also advanced costs for several of these legal matters. These costs are not reimbursed unless and until a recovery is made, either through litigation or settlement. Upon such time that these costs are reimbursed ("Cost Reimbursement Payments"), RG-P&H has transferred such Cost Reimbursement Payments to the Debtor (and will continue to do so). As of the date of this Plan, the total amount of Cost Reimbursement Payments received by the Debtor is approximately $100,000.00, and all such amounts have been deposited into the Debtor's DIP Account. It is estimated that approximately $50,000.00 of Cost Reimbursement Payments remain; however, such amount is wholly contingent upon recoveries being made, either through litigation or settlement.

The timing and circumstances surrounding the establishment of RG-P&H may have resulted in claims existing by the Debtor and the bankruptcy estate against RG-P&H. RG-P&H denies any such liability, and further believes that given the work performed on legal matters for which no benefit was derived, the Debtor and the bankruptcy estate were not economically damaged. However, as set forth below, Remer and Georges-Pierre have agreed to fund the Plan payments referenced below, through their income with RG-P&H, such that Class 2 Creditors receive a distribution of at least $300,000.00, subject to the Early Discount Provision set forth below.

1.03    Liquidation Analysis. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**.

The estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's property, as well as potential claims held by the Debtor. The liquidation value of the Debtor's assets as of the date of this Plan is approximately $156,080.00. After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $90,026.00 if this case were converted to a Chapter 7 liquidation. As such, creditors are receiving in this Plan more than what they would receive in a hypothetical Chapter 7 proceeding.

1.04    Ability to Make Future Plan Payments. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information as **Exhibit "B"**. The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for the period described in 11 U.S.C. § 1191(c)(2) of $300,000.00. The final Plan payment is expected to be paid on June 1, 2028. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

1.05    Projected Recovery of Avoidable Transfers. The Debtor has analyzed its books and records and does not believe that any avoidable transfers exist that would generate a recovery for the bankruptcy estate.

As stated above, a potential claim(s) may exist against RG-P&H, given the timing and circumstances surrounding the establishment of this entity. However, given the cost to the bankruptcy estate in pursuing such potential claim(s), as well as potential defenses to same and collectability, the Debtor does not believe that it is in the best interest of the bankruptcy estate to pursue such potential claim(s). In addition, the Debtor's principals, Remer and Georges-Pierre,

have agreed to fund the Plan payments referenced below, through their income with RG-P&H, such that Class 2 Creditors receive a distribution of at least $300,000.00, subject to the Early Discount Provision set forth below.

The Debtor's Statement of Financial Affairs also reference certain payments made to Bankers Healthcare Group, Verbatim Legal Solutions LLC and Due Process LLC, within the 90 days prior to the Petition Date. However, the Debtor believes that such entities would have defenses under 11 U.S.C. § 547(c) as to any Chapter 5 claims brought against them, including such defenses as contemporaneous exchange(s) of new value, subsequent new value and ordinary course of business. As such, given the cost to the bankruptcy estate in pursuing such potential claim(s), as well as potential defenses to same, the Debtor does not believe that it is in the best interest of the bankruptcy estate to pursue such potential claim(s).

Given the above, the Debtor does not intend to pursue preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code or under any other theories of liability.

## ARTICLE II
## DEFINITIONS

All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.01    Administrative Claim - means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2.02    Allow, Allowed, Allowance (or words of similar meaning) - mean with respect to a Claim or equity interest against the Debtor that is: (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the above-referenced bankruptcy case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03    <u>Assets</u> - mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature.

2.04    <u>Avoidance Actions</u> – means any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.05    <u>Bankruptcy Code</u> - means Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

2.06    <u>Bankruptcy Court or Court</u> – mean the United States Bankruptcy Court for the Southern District of Florida.

2.07    <u>Bankruptcy Rules</u> - means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

2.08    <u>Claim</u> - means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.09    <u>Claimant</u> – means the Holder of a Claim.

2.010    <u>Class</u> - means a group of Claims or Equity Interests described in Article IV of this Plan.

2.011    <u>Confirmation Date</u> - means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.012    <u>Confirmation Order</u> - means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.013    <u>Confirmation Hearing</u> - means the hearing at which the Bankruptcy Court confirms the Plan.

2.014    <u>Disputed Claim</u> - means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.

2.015    <u>Distribution</u> - means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.016   <u>Distribution Address</u> - means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

2.017   <u>Effective Date</u> – means the date upon which the Confirmation Order becomes a Final Order.

2.018   <u>Final Order</u> **-** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.019   <u>First Payment Date</u> – means the first day of the first month after the Effective Date of the Plan.

2.020   <u>Holder</u> - means the legal or beneficial Holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

2.021   <u>Impaired</u> - means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.022   <u>Petition Date</u> – means January 6, 2023.

2.023   <u>Priority Claim</u> - means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3) - (7).

2.024   <u>Priority Tax Claim</u> - means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

2.025   <u>Secured Claim</u> - means a Claim that is (i) secured by a valid and perfected lien on property in which the Debtor's estate has an interest, but only to the extent of the value of the claimant's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a), or (b) subject to setoff under 11 U.S.C. § 553, but only to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C. § 553.

2.026   <u>Subchapter V Trustee</u> – means the individual serving in this bankruptcy proceeding as trustee pursuant to 11 U.S.C. § 1183.

2.027   <u>Undersecured Claim</u> - means the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

2.028   <u>Unsecured Claim</u> - means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims.  Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.  However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

3.02     Administrative Expense Claims.   Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e).  If not otherwise specifically provided for herein, any other allowed administrative expense claims will be paid in full, plus statutory interest if applicable, over 60 months from the First Payment Date, in 20 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter.  Administrative Expense Claims shall be filed on or before the deadline as set by the Court or otherwise pursuant to the Bankruptcy Code.

3.03     Priority Tax Claims.   Each holder of an allowed priority tax claim will be paid in full on the First Payment Date.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND
## INTERESTS UNDER THE PLAN

4.01     Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | Class 1 is comprised of all Priority Claims.  No undisputed, noncontingent and/or liquidated Priority Claims have been scheduled by the Debtor.  One (1) Priority Claim has been filed, which is Claim # 1 of the Internal Revenue Service, for estimated 2022 federal income taxes.  The Debtor does not believe that it has any tax liability for the year 2022.  However, the Debtor shall pay any federal income taxes for the year 2022 (and thereafter) in the normal course, when such taxes become due and owing.  To the extent that any such amount is due and owing as of the Effective Date, then such amount shall be paid in full on the First Payment Date.<br><br>In the event that it is determined by the Court that any *other* allowed Priority Claims do exist, then each holder of a Class 1 Priority Claim will be paid in full, plus statutory interest if applicable, over 60 months from the First Payment Date, in 20 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter. |
| Class 2 - General Unsecured Creditors<br><br>**Total Estimated Allowed General Unsecured Claims: $398,847.55** | Impaired | Class 2 consists of all allowed general unsecured claims.  The Class 2 Creditors ("Class 2 Creditors") shall share *pro rata* in a total distribution in the amount of $300,000.00, subject to an early payment discount in the amount of $25,000.00, which would result in a discounted total distribution in the amount of $275,000.00.  Furthermore, Class 2 Creditors will receive any and all proceeds |

| | | |
|---|---|---|
| | | received from the Debtor's ERTC Refund, up to such amount sufficient to pay Class 2 Creditors a 100% distribution.<br><br>Allowed general unsecured claimants ("Class 2 Creditors") shall receive an initial payment (the "Initial Payment") on the First Payment Date, comprised of all of the funds in the Debtor's Debtor-in-Possession Bank Account (the "DIP Account"), after payment of any and all Allowed Administrative Claims and Allowed Priority Claims.  It is estimated that the Initial Payment to Class 2 Creditors will equal $150,000.00.  Thereafter, any Cost Reimbursement Payment(s) received by the Debtor after the First Payment Date will be distributed to Class 2 Creditors monthly, on a *pro rata* basis, on the first day of every month thereafter, until such time as there are no Cost Reimbursement Payment(s) remaining.<br><br>In addition, Class 2 Creditors shall receive an additional distribution from Remer and Georges-Pierre, equal to the greater of: (a) the amount necessary to ensure a distribution to Class 2 Creditors in the total amount of $300,000.00; or (b) the sum of $15,000.00, to be paid on a *pro rata* basis.  Such payments are estimated to total $150,000.00, to be paid over 5 years (60 months), in 20 quarterly payments totaling $7,500.00 per payment, with the first payment due on the First Payment Date and continuing on the first day of every quarter thereafter.  After 19 quarterly payments are made, Remer and Georges-Pierre shall make a final quarterly payment in an amount necessary to ensure that Class 2 Creditors receive a total distribution in the amount of $300,000.00, subject to the Early Discount Provision below.<br><br>Notwithstanding the above, an early payment discount shall apply, such that if Class 2 Creditors are paid the total amount of $275,000.00 (by virtue of the Initial Payment, plus Cost Reimbursement Payment(s) received by the Debtor after the First Payment Date, plus any amounts necessary to be paid by RG-P&H to ensure payment of such amount) by the third anniversary of the First Payment Date, then Class 2 Creditors will receive a discounted total distribution in the amount of $275,000.00 (the "Early Discount Provision").<br><br>If the Debtor receives the ERTC Refund, and such amount is sufficient to pay Class 2 Creditors a 100% distribution, then the Early Discount Provision shall not apply, and Class 2 Creditors will receive a 100% distribution from such proceeds.<br><br>The estimated Class 2 general unsecured creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached **Exhibit "C"**.  Excluding the ERTC Refund, Class 2 Creditors will be receiving a distribution of approximately 75.2167% of their allowed claim(s), which is an amount in excess of what claimants would receive in a hypothetical Chapter 7 proceeding, in which case such claimants would receive 22.5715%, as set forth in Exhibit "A". |
| Class 3 - Equity Security Holders of the Debtor | Unimpaired | Class 3 consists of all allowed equity interests in the Debtor, which includes interest in any share of preferred stock, common stock or other instruments evidencing an ownership interest in the Debtor.<br><br>All Equity Security Holders of the Debtor will retain their interest(s) in the Debtor as such interest(s) existed prior to the Petition Date, with Remer retaining a 50% stock interest and Georges-Pierre retaining a 50% stock interest. |

4.02    Unclassified Claims and interests shall be treated as follows under this Plan:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Attorneys (LSS Law and Kingcade, Garcia & McMaken, P.A.) | The administrative professional fees and costs of the Debtor's attorneys are anticipated to be $25,000.00. Kingcade, Garcia & McMaken, P.A. is holding the amount of $15,262.00 in its attorney trust account, as unused fee advance/retainer. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs (net of the unused fee advance/retainer) shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Debtor's Accountant (Dinnall Fyne & Company, Inc.) | The administrative professional fees and costs of the Debtor's accountant are anticipated to be $5,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Subchapter V Trustee (Aleida Martinez-Molina) | The administrative professional fees and costs of the Subchapter V Trustee are anticipated to be $10,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

5.02    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr. P. 9019.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: Agreement with ERC Go, for the collection of the ERTC Refund described herein, on a 15% contingency fee basis.

6.02    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the Confirmation Date, upon the Effective Date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Cost Reimbursement Payments. The Plan will be funded partially through the Cost Reimbursement Payments described above, and partially through funds on hand in the DIP Account as of the First Payment Date. As of the date of this Plan, the Debtor is holding $105,716.90 in the DIP Account. The Debtor anticipates that by the First Payment Date, the Debtor will be holding $150,000.00 in the DIP Account. Any Cost Reimbursement Payments received by the Debtor after the First Payment Date will be paid to Class 2 Creditors, as set forth in ¶ 4.01 above.

7.02    Funding by Remer and Georges-Pierre. Remer and Georges-Pierre have agreed to fund the Plan payments referenced above, to ensure that Class 2 Creditors receive a distribution in the amount of at least $300,000.00, subject to the Early Discount Provision. Remer and Georges-Pierre will pay a minimum of $15,000.00, to be paid to Class 2 Creditors on a pro rata basis. It is estimated that the amount that Remer and Georges-Pierre must contribute to the Plan payments will be $150,000.00, to be paid over 5 years (60 months), in 20 quarterly payments totaling $7,500.00 per payment, with the first payment due on the First Payment Date and continuing on the first day of every quarter thereafter. After 19 quarterly payments are made, Remer and Georges-Pierre shall make a final quarterly payment in an amount necessary to ensure that Class 2 Creditors receive a total distribution in the amount of $300,000.00, subject to the Early Discount Provision.

7.03    ERTC Refund. The Debtor has contracted with a company named Frandsen Accounting & Consulting, Inc., d/b/a ERC Go, a division of Frandsen Accounting ("ERC Go"), to attempt to receive an Employee Retention Tax Credit ("ERTC") refund (the "ERTC Refund"). The terms of such contract are that ERC Go will receive 15% of any ERTC Refund received by the Debtor. It is estimated that the amount of the ERTC Refund will be $401,245.22. However, it is unknown at this time whether or not the ERTC Refund will actually be received by the Debtor. The Debtor will seek to employ ERC Go as a professional of the bankruptcy estate, pursuant to 11 U.S.C. § 327.

In the event that the Debtor does receive the ERTC Refund, the proceeds of such ERTC Refund will be paid to Class 2 Creditors, within 30 days of the Debtor's receipt of same, on a pro rata basis, up to such amount necessary to pay Class 2 Creditors a 100% distribution of any and all allowed general unsecured claims, without interest. In such event, the Debtor will not be obligated to remit any further amounts thereafter to Class 2 Creditors. If the Debtor receives the ERTC Refund, and such amount is sufficient to pay Class 2 Creditors a 100% distribution, then the Early Discount Provision shall not apply. The Debtor will provide reports to Class 2 Creditors, as to the status of the ERTC Refund, on a biannual basis.

7.04    Compliance With 11 U.S.C. § 1191(d). The funds on hand in the DIP Account on the First Payment Date, as well as any Cost Reimbursement Payments received after the First Payment Date, are not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor. As such, after payment of any and all Allowed Administrative Claims and Allowed Priority Claims, Class 2 Creditors will receive all amounts in the Debtor's DIP Account, as well as all Cost Reimbursement Payments received after the First Payment Date.

To the extent that the Debtor wishes to prepay any amounts due under this Plan, the Debtor reserves the right to do so without penalty. The Debtor, as reorganized, will retain and will be re-vested in all property of the estate, excepting property which is to be sold or otherwise disposed of as provided herein and executory contracts which are rejected pursuant to this Plan. The retained property shall be used by the Debtor in order to perform under this Plan.

## ARTICLE VIII
## DISCHARGE AND EFFECT OF CONFIRMATION

8.01    Discharge.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6).  If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.03    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.04    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

8.05    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE IX
## OTHER PROVISIONS

9.01    Disbursing Agent.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by the Subchapter V Trustee, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  In such instance, the Debtor shall remit to the Subchapter V Trustee, on or before the 15th day of the month prior to the month in which

each Plan payment is due, the appropriate amount(s) for the Subchapter V Trustee to remit to the respective creditor(s) under this Plan.

A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee in remitting such Distributions. The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    Subchapter V Trustee. If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated. The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of such substantial consummation not later than 14 days after the Plan is substantially consummated. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    Default of Plan Payment(s). Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorneys, Zach B. Shelomith, Esq. (at zbs@lss.law) and Timothy S. Kingcade, Esq. (at scanner@miamibankruptcy.com) (the "Default Notice") and by regular U.S. Mail to the Debtor's attorneys, at the address(es) set forth at the bottom of this Plan. The Debtor shall be afforded forty-five (45) days from the date of the electronic mail receipt by the Debtor's counsel(s) of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made".

Therefore, in the event that the Debtor is in Default of this Plan, then Claimants shall be entitled to any and all remedies available under applicable law, to collect the full amount of the Claimants' allowed claim(s) against the Debtor (not limited to the amount that such Claimants will receive as a distribution under this Plan).

9.04    Reservation of Right to Modify Plan Post-Confirmation. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05    Post-Petition Interest on Claims. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

9.06    <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>.  Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address.   In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest.   An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07    <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08    <u>Severability</u>.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.010    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.011    <u>Controlling Effect</u>.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.012    <u>Corporate Governance</u>.  Equity interests of the Debtor shall be treated as set forth in ¶ 4.01 of this Plan.  The Reorganized Debtor's managers shall be Anthony M. Georges-Pierre and Jason S. Remer.

9.013   <u>Post-Confirmation Operation of Business</u>.  Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court.  Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

This Plan of Reorganization is dated April 6, 2023 and is hereby approved by the undersigned.

/s/ Anthony M. Georges-Pierre
By:  Anthony M. Georges-Pierre, as
Manager of the Debtor

Submitted by:

**Zach B. Shelomith, Esq.**
**Florida Bar No.: 0122548**
**LSS Law**
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Tel. No.: 954-920-5355
E-Mail: zbs@lss.law
***Attorneys for the Debtor***

and

**Timothy S. Kingcade, Esq.**
**Florida Bar No.: 082309**
**Kingcade, Garcia & McMaken, P.A.**
1370 Coral Way
Miami, FL 33145
Tel. No.: 305-285-9100
E-Mail: scanner@miamibankruptcy.com
***Attorneys for the Debtor***

9.013  Post-Confirmation Operation of Business.  Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court.  Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

This Plan of Reorganization is dated April 6, 2023 and is hereby approved by the undersigned.

By:  Anthony M. Georges-Pierre, as
Manager of the Debtor

Submitted by:

**Zach B. Shelomith, Esq.**
**Florida Bar No.: 0122548**
**LSS Law**
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Tel. No.: 954-920-5355
E-Mail: zbs@lss.law
*Attorneys for the Debtor*

and

**Timothy S. Kingcade, Esq.**
**Florida Bar No.: 082309**
**Kingcade, Garcia & McMaken, P.A.**
1370 Coral Way
Miami, FL 33145
Tel. No.: 305-285-9100
E-Mail: scanner@miamibankruptcy.com
*Attorneys for the Debtor*

# Exhibit "A" – Liquidation Analysis

| Exhibit A - Liquidation Analysis | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| **Debtor's Estimated Liquidation Value of Assets** | | | | | |
| | | | | | |
| **Assets:** | **Value** | | | | |
| | | | | | |
| Debtor in Possession Bank Account (Estimated as of 4/3/2023) | $100,000.00 | | | | |
| Contingent Interest in Recoveries of Costs Advanced ("Cost Reimbursement Payments") (see Note 1) | $50,000.00 | | | | |
| Tangible Personal Property at Business Premises | $6,080.00 | | | | |
| Domain Name | $0.00 | | | | |
| | | | | | |
| Potential Employee Retention Tax Credit (ERTC) Refund (Estimated at $401,245.22; Speculative; listed at $0.00) (see Note 2) | $0.00 | | | | |
| Potential Avoidance Actions and Third Party Claims (Speculative and Unknown; listed at $0.00) (see Note 3) | $0.00 | | | | |
| | | | | | |
| **Total Assets at Liquidation Value:** | **$156,080.00** | | | | |
| | | | | | |
| **Less:** | | | | | |
| | | | | | |
| Est. Chapter 7 Trustee Fee | $16,054.00 | | | | |
| Est. Chapter 7 Trustee Professional Fee expenses | $15,000.00 | | | | |
| Est. Chapter 11 admin. expenses | $35,000.00 | | | | |
| | | | | | |
| **Recovery for Unsecured Creditors in Chapter 7:** | **$90,026.00** | | | | |
| | | | | | |
| **Percentage of Claims Which Unsecured Creditors Would** | | | | | |
| **Receive or Retain in a Chapter 7 Liquidation:** | **22.5715%** | | | | |
| | | | | | |
| **Percentage of Claims Which Unsecured Creditors Would** | | | | | |
| **Receive or Retain under the Plan:** | **75.2167%** | | | | |
| | | | | | |
| **Note 1: This is the estimated amount of Cost Reimbursement Payments to be received after the First Payment Date.** | | | | | |
| **100% of such amounts received will be paid to Class 2 Creditors as per the Plan.** | | | | | |
| | | | | | |
| **Note 2: Value listed at $0.00 as it is unknown whether the ERTC Refund will be received.** | | | | | |
| **However, 100% of such amounts received will be paid to Class 2 Creditors, up to such amount sufficient for a 100% distribution.** | | | | | |
| | | | | | |
| **Note 3: Such claims are speculative; however, Debtor's principals have agreed to fund Plan such that Class 2 Creditors** | | | | | |
| **receive at least $300,000.00, subject to Early Discount Provision in the Plan.** | | | | | |

# Exhibit "B" – Projected Financial Information

| Exhibit B - Projected Financial Information | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| **Projections as to Initial Payment to Class 2 Creditors Under Plan:** | | | | | |
| | | | | | |
| **Amount in Debtor in Possession Bank Account as of April 6, 2023: $105,716.90** | | | | | |
| | | | | | |
| **Projections as to Ability of Jason Remer and Anthony Georges-Pierre to Make Quarterly Payments:** | | | | | |
| | | | | | |
| **Jason S. Remer:** | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| | | | | | |
| Projected Income from Employment at RG-P&H: | $160,000.00 | $160,000.00 | $160,000.00 | $160,000.00 | $160,000.00 |
| | | | | | |
| Projected Expenses: | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| | | | | | |
| Net Income: | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 |
| | | | | | |
| **Anthony M. Georges-Pierre:** | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| | | | | | |
| Projected Income from Employment at RG-P&H: | $160,000.00 | $160,000.00 | $160,000.00 | $160,000.00 | $160,000.00 |
| | | | | | |
| Projected Expenses: | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| | | | | | |
| Net Income: | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 | $60,000.00 |
| | | | | | |
| **Amount Necessary on Annual Basis to Pay $7,500.00 per quarter to Class 2 Creditors: $30,000.00 per year (total)** | | | | | |

# Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan

| | | Remer & Georges-Pierre PLLC - List of General Unsecured Creditors to be Paid Pursuant to Plan | | | | | |
|---|---|---|---|---|---|---|---|
| **Class 2 General Unsecured Creditors:** | | | | | | | |
| **Class** | **Claim #** | **Name of Creditor** | **Amount of** | **Proposed** | **Estimated** | **Estimated** | **Proposed** |
| | | | **Claim** | **Distribution** | **Initial** | **Quarterly** | **Discounted** |
| | | | | | **Payment** | **Payments** | **Distribution** |
| 2 | 2 | Marcum LLP | $27,119.33 | $20,398.27 | $10,199.13 | $509.96 | $18,698.41 |
| 2 | 3 | OJF Services, Inc. | $51,281.49 | $38,572.25 | $19,286.12 | $964.31 | $35,357.89 |
| 2 | 4 | SRCTD 44-200 LLC and FS Equity Investments | $320,446.73 | $241,029.48 | $120,514.74 | $6,025.74 | $220,943.69 |
| | | **Total General Unsecured Claims** | **$398,847.55** | **$300,000.00** | **$150,000.00** | **$7,500.00** | **$275,000.00** |
| | | **Distribution Percentage** | **75.2167%** | | | | **68.9486%** |
| | | | | | | | |
| **Disposition of Other Claims Not Listed Above:** | | | | | | | |
| | | | | | | | |
| **Class** | **Claim #** | **Name of Creditor** | **Amount of** | **Proposed** | | | |
| | | | **Claim** | **Disposition** | | | |
| 1 | 1 | Internal Revenue Service | $4,680.00 | Allowed Amount of Priority Claim Will be Paid in Full | | | |